UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LEO L. DURAN,<br>Plaintiff,<br><br>v.<br><br>A.T. WALL II, ACI DIRECTOR,<br>CORRECTIONAL OFFICER DENNETT<br>Defendants. | C. A. No. 15-13-M-LDA |

MEMORANDUM & ORDER

This complaint arises from Leo L. Duran's complaint against Director of the Rhode Island Adult Correctional Institution ("ACI"), A.T. Wall, II, and ACI Correctional Officer Robert Dennett. Mr. Duran alleges that ACI Inmate Gadson attacked him on February 2, 2012 while he was outside in a recreational cage. Mr. Duran contends that Defendants are responsible for his injuries from that altercation for two reasons. First, Mr. Duran argues that Officer Dennett was aware of exchanged threats and insults between Mr. Duran and Inmate Gadson beginning in November of 2011 to which Officer Dennett turned a blind eye, failing to prevent foreseeable harm to Mr. Duran, thereby violating his Eight Amendment rights. Second, Mr. Duran argues that Director Wall acted with depraved indifference when implementing Rhode Island Department of Corrections ("D.O.C.") policy 15.11-3, which addresses C-Status inmates. Specifically, Mr. Duran alleges that Director Wall's refusal to implement a 24/7 segregation policy for C-Status inmates is a violation of his Eighth Amendment rights.

In his pro se complaint, Mr. Duran seeks compensatory and punitive damages under 42 U.S.C. § 1983 based on alleged Eighth Amendment violations, a declaratory judgment that Defendants violated his state and federal rights, and an injunction ordering Defendants to refrain from placing C-Status inmates in recreational cages with other inmates.

For the reasons that follow, this Court finds that (1) Defendants cannot be held liable in their official capacities under § 1983; (2) although there is a genuine dispute as to a material fact regarding the claims against Officer Dennett, the doctrine of qualified immunity protects him from suit; (3) there is no genuine dispute as to any material fact pertaining to the claim against Director Wall in his individual capacity, and even if such a dispute did exist, Director Wall would also be protected under the doctrine of qualified immunity; and (4) there is no genuine dispute as to any material fact pertaining to any claims against Director Wall in his supervisory capacity. Therefore, the Court GRANTS the Defendants' Motion for Summary Judgment. (ECF No. 48).

I. FACTS AND BACKGROUND

The relevant, undisputed facts reveal that Mr. Duran was on single recreation status (C-Status) from September 2011 through February 1, 2012. From September 2011 through February 2012, Mr. Duran and Inmate Gadson were housed in separate cells within E-mod in the High Security Center of the ACI. On November 15, 2011, Mr. Duran, after returning from recreation, was placed in a

2

low-side interlock[1] with Inmates Gadson and Grappa. An altercation between Mr. Duran and Inmate Gadson ensued, and Correctional Officer Ventura booked Mr. Duran for the altercation. Several days later, Mr. Duran spoke to Officer Dennett regarding Inmate Gadson. At a minimum, Mr. Duran conveyed that Inmate Gadson was "talking a lot of shit, shit, shit;" however, Mr. Duran failed to define the term "threat" and never told Officer Dennett that he believed the relationship between himself and Inmate Gadson would further become physical.[2] On February 2, 2012, Correctional Officer Daniels placed Mr. Duran in an E and F recreational cage. Correctional Officer Calise then escorted Inmate Gadson to Mr. Duran's cage where the two were placed together. Shortly thereafter, Mr. Duran and Inmate Gadson entered into an altercation; Mr. Duran sustained injuries to his left eye orbit. The injuries that Mr. Duran sustained on February 2, 2012 are the basis for his complaint, and Defendants have subsequently moved for summary judgment.

II. STANDARD OF REVIEW

This Court may grant summary judgment only if it determines that the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *AGA Fishing Group Ltd. v. Brown & Brown Inc.*, 533 F.3d 20, 23 (1st Cir. 2008). The

---

[1] A low-side interlock is a waiting area on the way to recreational cages.
[2] Defendants filed a Motion to Strike portions of the "Declaration of Leo [L.] Duran," (ECF No. 55) to which Mr. Duran filed a response. (ECF No. 59). In light of the Court's ruling on this matter, the Court DENIES Defendant's Motion to Strike as moot.

moving party has the initial burden of proving that no genuine dispute as to any material fact exists. *See Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000). If the moving party satisfies its initial burden, the nonmoving party is then required to show that "a factual dispute does exist" by more than "inferences, conclusory allegations, or rank speculation." *Ingram v. Brink's, Inc.*, 414 F.3d 222, 228-29 (1st Cir. 2005). However, in evaluating a motion for summary judgment, "the facts are viewed in the light most favorable to the nonmovant . . . and all reasonable inferences are drawn in the nonmovant's favor." *Id.* at 228. Moreover, this Court will hold Mr. Duran's "pro se pleadings to less demanding standards than those drafted by lawyers . . . to guard against the loss of pro se claims due to technical defects." *Dutil v. Murphy*, 550 F.3d 154, 158 (1st Cir. 2008) (internal citation omitted).

In determining whether a genuine dispute exists, this Court must determine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Travers v. Flight Servs. & Sys., Inc.*, 737 F.3d 144, 146 (1st Cir. 2013) (quoting *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). Lastly, a fact is material "if it has the potential of determining the outcome of the litigation." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008).

III. ANALYSIS

Because Mr. Duran brings his claim under 42 U.S.C. § 1983, he is required to prove three elements. *Rivera Crespo v. Gonzalez-Cruz*, No. 13-1004, 2015 WL

1022202, at *3 (D. P.R. Mar. 9, 2015). Mr. Duran must prove that Defendants acted "under the color of state law," that the Defendants' "conduct deprived [him] of [his] federally protected rights," and that their conduct was "causally connected to [his] deprivation." *Id.* To satisfy the third element, "[Mr. Duran] must show that the [D]efendant[s] were personally and directly involved in causing the violation of [his] federally protected rights . . . [and] that the [D]efendants' conduct or inaction must have been intentional, grossly negligent, or must have amounted to a reckless or callous indifference to [his] constitutional rights . . . ." *See id.* Mr. Duran alleges that Defendants violated § 1983 both in their official and individual capacities.

### A. Claims against Director Wall and Officer Dennett in their Official Capacities

Defendants argue that because they are not considered persons under § 1983, the claims against them in their official capacity should be summarily dismissed. Mr. Duran does not address this argument in his Memorandum of Law in Objection to Defendants' Motion for Summary Judgment (ECF No. 51).

The United States Supreme Court has specifically addressed the issue of whether state officials can be sued for damages under § 1983 in their official capacity. *See, e.g., Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985); *Brandon v. Holt*, 469 U.S. 464 (1985). In answering this question, the Supreme Court acknowledged that although state officials are quite literally persons, the ultimate entity in such a suit would be the state. *See Will*, 491 U.S. at 71. Allowing a state official to qualify as a "person" under § 1983 would be no different than "a suit against the [s]tate itself." *Id.; see*

5

*also Negron-Almeda v. Santiago*, 528 F.3d 15, 19 (1st. Cir. 2008) (barring § 1983 suit against Puerto Rican government official acting in his official capacity).

Because Mr. Duran has made no argument to the contrary, and because the law is clear and controlling on this issue, this Court grants Defendants' motion for summary judgment with respect to all claims for damages against them in their official capacities.

B. Claims against Officer Dennett in his Individual Capacity

Officer Dennett argues that there is no genuine dispute as to any material fact and makes several arguments to disestablish the causal connection between his acts and Mr. Duran's injuries. Officer Dennett argues that he was not physically present during Mr. Duran's assault, Mr. Duran failed to inform Officer Dennett that he feared for his safety from Inmate Gadson, Mr. Duran was on single recreational status when Officer Dennett left for vacation, Mr. Duran was not forced to engage in recreational time, and Officer Dennett did not escort Mr. Duran to the recreational cage.

However, Mr. Duran alleges that Officer Dennett was aware of the threats and bad relations between Mr. Duran and Inmate Gadson. Drawing all reasonable inferences in favor of the nonmoving party, the facts show that Mr. Duran, at a minimum, informed Officer Dennett, at least on one occasion, that Inmate Gadson was threatening him. Although Mr. Duran did not define the term "threat" in his deposition response, this Court can assume, drawing all reasonable inferences in Mr. Duran's favor, that Officer Dennett would have understood what Mr. Duran

was conveying. Because a jury, drawing favorable inferences, could reasonably find that Mr. Duran informed Officer Dennett that Inmate Gadson was threatening him, and thus feared for his safety, this Court finds that a genuine dispute on this issue exists. *See Travers*, 737 F.3d at 146. Furthermore, the fact that Mr. Duran relayed Inmate Gadson's threats to Officer Dennett is a material fact. Because Mr. Duran's § 1983 claim requires him to show that Officer Dennett's actions or inactions were causally connected to the deprivation of Mr. Duran's protected rights, the fact that Mr. Duran informed Officer Dennett about Inmate Gadson's threats is a material fact. *See Maymi*, 515 F.3d at 25; *Rivera Crespo*, 2015 WL 1022202, at *3.

However, the doctrine of qualified immunity protects Officer Dennett from liability. This doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In assessing whether qualified immunity is available, this Court must analyze two questions:

> First, we inquire whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation. Second, we inquire whether the violated right was clearly established at the time that the offending conduct occurred. The second, clearly established, step itself encompasses two questions: whether the contours of the right, in general, were sufficiently clear, and whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right.

*Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014) (internal citations omitted). When the facts are viewed most favorably to Mr. Duran, this Court can indeed make out a constitutional violation—prison officials have a duty, under the Eighth Amendment "to protect prisoners from violence at the hands of other inmates." *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)); *Lakin v. Barnhart*, 758 F.3d 66, 70 (1st Cir. 2014) (internal citation omitted); *Giroux v. Somerset Cty.*, 178 F.3d 28, 32 (1st Cir. 1999) (internal citations omitted).

In approaching the second question, this Court must ask whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348 (2014). Mr. Duran cites no controlling authority[3] that would lead this Court to conclude that Officer Dennett reasonably would have known that Mr. Duran's one-time mention of feeling threatened, and Officer Dennett's subsequent failure to report that threat, would be a constitutional violation. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2024 (2014) (noting plaintiffs failure to cite a "consensus of cases" during the relevant time period); *Ashcroft v. Al-Kidd*, 563 U.S. 731, 746 (2011) (stating the importance of controlling authority in determining whether a right was "clearly established"); *see also Savard v. Rhode Island*, 338 F.3d 23, 28 (1st Cir. 2003) ("The court must canvass controlling

---

[3] *See Kostic v. Tex. A & M Univ. at Commerce*, 11 F. Supp. 3d 699, 722 (N.D. Tex. 2014) (quoting *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)) ("When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for the purposes of defeating qualified immunity.").

authority in its own jurisdiction and, if none exists, attempt to fathom whether there is a consensus of persuasive authority elsewhere.").[4]

Because this Court finds that Officer Dennett's actions are protected under the doctrine of qualified immunity, this Court grants his motion for summary judgment with respect to all claims against him in his individual capacity.

C.  Claims against Director Wall in his Individual Capacity

Mr. Duran alleges that Director Wall violated his Eighth Amendment rights because D.O.C. Policy 15.11-3 does not contain compatibility procedures for C-Status inmates. When an inmate brings a claim for violation of the Eighth Amendment for failure to prevent harm, the inmate must pass a dual-pronged test. "[First], the plaintiff must demonstrate he was incarcerated under conditions imposing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. "Second, the plaintiff must show that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." *Id.* at 835. A prison official will not be held liable "unless the official knows of and

---

[4] Mr. Duran cites to *Hutchinson v. McCabee*, 168 F. Supp. 2d 101 (S.D. N.Y. 2001) for the proposition that prison officials should offer inmates protection while investigating threats. However, in *Hutchinson*, the plaintiff-inmate was physically beaten and then specifically told the prison official that he "feared the other inmates would kill him." *Id.* at 102. Mr. Duran had one, minor altercation with Inmate Gadson in November of 2011, and Mr. Duran never conveyed to Officer Dennett that he believed relations between himself and Inmate Gadson would become physical, let alone that he feared for his life. Likewise, Mr. Duran's relies on *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8 (1st Cir. 1990), which is not applicable here. In *Ayala Serrano*, the prison official's failure to intervene in an ongoing inmate-on-inmate assault was not covered under the doctrine of qualified immunity. *Id.* at 13-14. Mr. Duran's allegations are that Officer Dennett's failure to report a previous threat resulted in his injuries; the duty to report is not factually the same as the duty to intervene.

disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. In viewing the amount of inmate fights prior to the February 2, 2012 incident, the report reveals two such occasions, one on September 29, 2010 and one on March 7, 2011.

With only two such incidents prior to Mr. Duran's assault, it cannot be said that Director Wall knew of and disregarded an *excessive* risk to inmate safety by continuing to implement D.O.C. Policy 15.11-3. Even assuming that Director Wall knew of the two prior incidents, it is unlikely that the inference could be drawn that both incidents were purely the result of D.O.C. Policy 15.11-3. Simply maintaining a policy that does not address compatibility between inmates during recreational time is not enough to show a violation of the Eighth Amendment. *See Burrell v. Hampshire Cty.*, 307 F.3d 1, 10 (1st Cir. 2002) (holding that "Hampshire Jail's policy of not screening and then segregating potentially violent prisoners from non-violent prisoners is not itself a facial violation of the Eighth Amendment.").

Given that there were only two prior incidents to the February 2, 2012 incident, this Court finds that there is no genuine dispute as to whether Director Wall acted with deliberate indifference to Mr. Duran's safety by implementing and maintaining D.O.C. Policy 15.11-3. Furthermore, even if there were a genuine dispute as to any material fact, Director Wall's actions would likewise be protected under the doctrine of qualified immunity for the reasons stated in the analysis

concerning Officer Dennett. Therefore, this Court grants Director Wall's motion for summary judgment for claims against him in his individual capacity.

D. Claims against Director Wall in his Supervisory Capacity

To the extent that Mr. Duran alleges that Director Wall is liable for Officer Dennett's actions due to Director Wall's supervisory capacity, Mr. Duran's claim fails. Under a § 1983 claim, a supervisor may not be held liable under the theory of respondeat superior; "the supervisor's liability must be premised on his own acts or omissions." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 515 (1st Cir. 2016). The causal link required is one where the "supervisor's conduct led inexorably to the constitutional violation." *Id.* (quoting *Hegarty v. Somerset Cty.*, 53 F.3d 1367, 1380 (1st Cir. 1995)). Furthermore, the supervisor's conduct must arise to the level of deliberate indifference. *Id.* Although an official can be held liable under § 1983 under a supervisory liability theory by formulating a policy, "an affirmative link between the behavior of the subordinate and the action or inaction of his supervisor" must exist. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994).

In assessing whether a supervisor bears any liability for his or her subordinate, it is important to keep in mind that the supervisor must exhibit deliberate indifference "toward the possibility that deficient performance of [subordinate] tasks could eventually contribute to a civil rights violation, and further, that such deficient performance was affirmatively linked to [the] [subordinate's] alleged misconduct." *Stone v. Caswell*, 963 F. Supp. 2d 32, 36 (D.

Mass. 2013). As the facts display, there is no affirmative link between Director Wall maintaining D.O.C. Policy 15.11-3 and Officer Dennett's failure to report Mr. Duran's complaint regarding Inmate Gadson. Therefore, this Court grants summary judgment as to any claims against Director Wall in his supervisory capacity.

IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 43) is GRANTED.

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

September 21, 2016